

FILED

JUL 2 8 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No. 09-28215-D-13L |
| | ) |
| Robert Darryl Maxwell and | ) Docket Control Nos. RTD-1, |
| Rebecca Marie Maxwell, | )                    NLE-1 |
| | ) Date:  July 7, 2009 |
|                    Debtors. | ) Time:  1:00 p.m. |
| | ) Dept:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

<u>MEMORANDUM DECISION</u>

On April 28, 2009, the debtors herein, Robert Darryl Maxwell and Rebecca Marie Maxwell ("the debtors"), filed their petition commencing this case, along with a proposed chapter 13 plan ("the plan"). On June 10 and June 11, 2009, respectively, the chapter 13 trustee, Lawrence J. Loheit ("the trustee"), and creditor The Golden 1 Credit Union ("the Credit Union") filed timely objections to confirmation of the plan ("the Objections"). For the reasons set forth below, the court will sustain the Objections.

<u>I. INTRODUCTION</u>

In the plan, the debtors propose to pay $550 per month for 60 months, which will yield nothing for general unsecured creditors. Because the plan does not propose a 100% dividend to unsecured creditors, and because the trustee and the Credit Union, as the holder of an unsecured claim, have objected, the plan must provide that all the debtors' projected disposable

income to be received during the applicable commitment period
will be applied to make payments to unsecured creditors under the
plan.   11 U.S.C. § 1325(b)(1).[1]

The issue is whether the debtors have projected disposable
income, as defined in § 1325(b)(2), thus allowing confirmation
only if their plan provides for a dividend to the unsecured
creditors, as §1325(b)(1)(B) requires.

II. ANALYSIS

The answer derives from an analysis of the debtors' Chapter
13 Statement of Current Monthly Income and Calculation of
Commitment Period and Disposable Income, Form B22C, filed April
28, 2009 ("Form B22C" or "B22C").   The Credit Union and the
trustee contend that the debtors used inappropriate figures in
the B22C, and that when the figures are corrected, the debtors
have disposable income, and thus, must provide for payments to
unsecured creditors.

A. Deduction for Business Expenses

The Credit Union and the trustee originally objected to the
$1,850 business expense deduction on line 3b[2] of the Form B22C on
the ground that the debtors had failed to file an itemization of
those expenses.   Although the J-schedule clearly requires a
detailed itemization, the debtors failed to include one with
their original schedules, but finally filed one only after the

_____

1.   Unless otherwise indicated, all Code, chapter, section
and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
1532, and to the Federal Rules of Bankruptcy Procedure, Rules
1001-9037.

2.   Unless otherwise noted, all references to particular
line items will refer to the line items on the Form B22C.

- 2 -

1 | Objections were filed.  The itemization lists the expenses of
2 | Mrs. Maxwell's pet grooming business.

3 | The court gave the Credit Union and the trustee an
4 | opportunity to respond to the itemization, and the court has
5 | considered their responses.  The court finds that the vehicle and
6 | internet deductions, $180 and $48, respectively, appear to be
7 | duplicative of the household expenses deducted later in the Form
8 | B22C.  The court rejects the Credit Union's additional argument,
9 | that the $30 repair and maintenance expense is duplicative of a
10 | household expense, and finds instead that such an expense appears
11 | reasonable for the business.

12 | The court finds persuasive the Credit Union's analysis of
13 | the debtors' business expenses, as listed on the detailed
14 | itemization, as contrasted with their business expenses, as
15 | listed on the Schedule C to their 2008 tax return.  The former
16 | total $1,850, the latter, $1,319.73.  While the debtors have not
17 | had an opportunity to respond to this analysis, that is a
18 | situation of their own making.  Had they filed the detailed
19 | itemization with their J-schedule, as required, the Credit Union
20 | could have presented its argument in its objection to
21 | confirmation, and the debtors could have responded.

22 | Absent an explanation of the discrepancy, the court will
23 | allow the business expenses claimed as deductions on the debtors'
24 | tax return, $1,319.73, as a starting point.[3]  The court will

25 |

26 | 3.  The court notes also that the debtors are projecting
27 | lower income from the business on a go-forward basis than they
   | actually made in 2008.  Compare the debtors' I-schedule with
28 | their Statement of Financial Affairs, answer to question 1.
   | (continued...)

- 3 -

1  deduct from that figure the $151.16 vehicle expense and the $48
2  internet expense as duplicative of the debtors' household
3  expenses.   This leaves $1,120.57 in business expenses the court
4  will allow, which is $729.43 less than the amount claimed,
5  $1,850.   Thus, the court will add $729 to the debtors' Monthly
6  Disposable Income ("MDI") on line 59 of the Form B22C.

7       The Credit Union also argues that the debtors have
8  improperly deducted their business expenses "above the line" on
9  the Form B22C; that is, in computing current monthly income,
10  contrary to <u>Drummond v. Wiegand (In re Wiegand)</u>, 386 B.R. 238
11  (9th Cir. BAP 2008).   The <u>Wiegand</u> panel held that business
12  expenses must be deducted from current monthly income, in
13  computing disposable income, rather than from gross receipts, in
14  computing current monthly income.   <u>Wiegand</u> at 242.   Thus, the
15  panel concluded that the Form 22C should be revised.   <u>Id</u>. at 243.

16       In this case, the deduction of the business expenses "above
17  the line;" that is, in computing current monthly income, did not
18  result in placing the debtors below the median income, nor did
19  the debtors attempt to deduct the expenses as a whole both above
20  and below the line.   Thus, the concerns raised in <u>Wiegand</u> (<u>see</u>
21  <u>Wiegand</u> at 241) are not present in this case, and the court
22  concludes that it is irrelevant where the debtors took the
23  deduction, except that they appear to have deducted the vehicle
24  and internet expenses twice, as discussed above.
25  / / /

26

27       3.(...continued)
    Absent an explanation, the projection of business expenses at
28  $500 per month <u>higher</u> than as reported on their 2008 tax returns
    is not reasonable.

- 4 -

1   Finally, the Credit Union raised for the first time in its
2   response the suggestion that Mrs. Maxwell's business income may
3   be understated on the Form B22C.  Thus, the Credit Union argues
4   that $300 should be added to the debtors' MDI.  However, although
5   the amount of the business income appears on the detailed
6   itemization of business expenses, that figure and the rest of the
7   information tending to support this argument were available to
8   the Credit Union when it originally filed its Objection.  As the
9   Credit Union failed to raise the argument at that time, the court
10  will not consider it now.

11  B. Deduction for "Two Old Cars"

12  Both the Credit Union and the trustee object to a $400
13  deduction for "two old cars" as a housing and utilities
14  adjustment on line 26.  They point out that the debtors also
15  deducted transportation expenses for two cars on line 27A and
16  ownership expenses for two cars on lines 28 and 29.  The debtors
17  listed only two cars on their B-schedule -- a 2003 Ford Explorer
18  and a 2003 Ford F-250.  The two old cars were not disclosed.

19  The debtors' only response to these (and other) objections
20  is that they "very much disagree," but that even if these
21  objections were sustained, the debtors' disposable income on the
22  B22C would still be zero, rendering the objections irrelevant.[4]

23  Because the debtors have failed to offer an argument or
24  evidence to the contrary, the court will presume the debtors
25  concede the point.  Further, a deduction for "two old cars" as a

26  _____

27  4.  Opposition to Trustee's Objection to Confirmation, filed
    July 2, 2009, 2:18-27; Opposition to Objection to Confirmation by
28  Golden One, filed July 2, 2009, 2:3-15.

- 5 -

housing or utilities expense makes no sense.  Accordingly, the court will add $400 to the MDI.

C. Deduction for Taxes

The Credit Union objects to the $1,200 deduction on line 30 of the Form B22C for income, self-employment, social security, and Medicare taxes.  The Credit Union points out that the debtors' actual federal tax liability for 2008 was $6,351, and their state tax liability was $807, for a total of $7,158, or $596.50 per month.[5]  The Credit Union adds $101 for Medicare taxes (based on Mr. Maxwell's 2008 income of $83,864 as listed in the Statement of Financial Affairs), bringing their total tax liability to approximately $700 per month, or $500 less than the $1,200 listed on the Form B22C.

The debtors again present no argument or evidence in response, except to "very much disagree."  The court will treat this response as a concession, and therefore, will add $500 to the debtors' MDI.

D. Deduction for Involuntary Deductions for Employment

The Credit Union objects to the $600.55 figure for involuntary deductions such as mandatory retirement contributions and union dues, on line 31, as being inconsistent with the debtors' schedules and tax return.  On their I-schedule, the debtors listed $378.19 as a monthly PERS deduction and $84.87 in monthly union dues.  On their 2008 tax returns, they listed $900

_____

5. A comparison of the debtors' I- and J-schedules with their 2008 income, as reported on the Statement of Financial Affairs, shows that they are projecting a lower income this year than last, and thus, their tax liability may reasonably be assumed to be no higher than last year.

for union dues, or $75 per month.  Thus, the correct deduction
appears to be $453 ($378 + $75), or $147 less than the debtors
claim on line 31.

In the absence of any explanation other than that they "very
much disagree," the court will add $147 to the debtors' MDI.

E. Deduction for Health Care Expenses

The Credit Union objects to the $130 deduction on line 36
for health care expenses not reimbursed by insurance, arguing
that the figure is excessive.  The debtors offer only the
ubiquitous response that they very much disagree.

However, the objection is too vague to be convincing, and
the court finds that $130 is not excessive for a family of two.[6]

F. Deduction for Extra Telecommunications Services

The Credit Union and the trustee object to the $200
deduction on line 37 for necessary telecommunications services
other than basic home telephone and cell phone services.  The
debtors offered no explanation or itemization of this expense at
the meeting of creditors.[7]  Further, the debtors' J-schedule
includes $205 for cable, internet, and cell phones, and the Form
B22C includes a housing and utilities expense on line 25A.

---

6.    The $130 figure is actually lower than the $250 in
medical and dental expenses listed on the debtors' J-schedule.

The court rejects the Credit Union's argument that the
deduction is not appropriate because the debtors listed no
deduction for medical expenses on Schedule A of their tax
returns.  Medical expenses listed on that schedule are meaningful
to the tax return only if the total exceeds a significant
percentage of the debtors' adjusted gross income.  The absence of
a figure on that schedule, therefore, does not support a
conclusion that the taxpayer had no medical expenses.

7. Declaration of Roxanne Daneri, filed June 11, 2009.

- 7 -

1    The debtors "very much disagree" with the trustee and the
2   Credit Union, but offer no substantive response.  Thus, the court
3   will sustain the objections and add $200 to the debtors' MDI.
4   G. Deduction for Medical and Disability Insurance Premiums

5    The debtors deduct $693 on line 39 for "insurance premiums."
6   The Credit Union objects to this amount, noting that $693 is
7   approximately double the amount of the deductions on the debtors'
8   2005 paystubs, which are the only paystubs the Credit Union has
9   been able to review.

10    The debtors had an opportunity to refute this argument with
11   more recent paystubs or with their own testimony, but they have
12   offered nothing.  Accordingly, the court will add one-half of
13   $693, or $346, to the MDI.

14   H. Deduction for Contributions to the Care of Family Members

15    The Credit Union and the trustee object to the $300
16   deduction on line 40 for the care of household or family members.
17   The debtors' testimony at the meeting of creditors was that they
18   help Mr. Maxwell's mother when they can and in varying amounts.
19   Thus, the argument goes, this is not a regular and necessary
20   payment.

21    The debtors counter with Mrs. Maxwell's testimony that they
22   spend an average of $300 per month for groceries and medicine for
23   Mr. Maxwell's mother, who is in her late 60's, is widowed, and
24   has Social Security as her only source of income.

25    This testimony sufficiently supports the conclusion that
26   this is an actual expense that is "reasonable and necessary for
27   care and support of an elderly . . . member of the debtor's
28   immediate family . . . who is unable to pay for such . . .

- 8 -

expenses."[8]

I. Deduction for Future Payments on Secured Claims

The debtors deduct $314 and $41, respectively, on lines 47 and 48 for ongoing payments to the Credit Union on account of its second deed of trust on the debtors' residence.

The Credit Union argues that because the debtors seek to strip off the deed of trust as wholly unsecured (a motion the Credit Union has not opposed), they are not entitled to these deductions.  The trustee makes the same argument, citing Thissen v. Johnson, 2009 U.S. Dist. LEXIS 46618 (E.D. Cal. May 26, 2009).

The debtors apparently concede the point, arguing only that they "very much disagree."  Thus, the court will add $314 and $41, a total of $355, to the MDI.

### III. COMPUTATION

Based on the foregoing, the court makes the following adjustments to the debtors' MDI:

| | | |
|---|---|---|
| <$1,878> | | MDI per the Debtors (Form B22C, line 59) |
| + | 729 | Business expenses (line 3b) |
| + | 400 | Two old cars (line 26) |
| + | 500 | Taxes (line 30) |
| + | 147 | Employment deductions (line 31) |
| + | 200 | Telecom services (line 37) |
| + | 346 | Health insurance premiums (line 39) |
| + | 355 | Future payments on secured claims (lines 47 & 48) |
| $ | 799 | Adjusted MDI |

---

8.  § 707(b)(2)(A)(ii)(II), incorporated by § 1325(b)(2), (3).

1

IV. CONCLUSION

2       Payment of $799 per month over the 60-month plan term would

3  generate $47,940 for unsecured creditors.  Because the plan fails

4  to provide for such a dividend, it does not provide that all the

5  debtors' projected disposable income to be received during the

6  applicable commitment period will be applied to make payments to

7  unsecured creditors under the plan, as required by § 1325(b)(1).

8  Accordingly, the court will sustain the Objections.  The court

9  will issue an appropriate order.

10

Dated: July 28, 2009

11                                     *Robert Bardwil*

                                 ROBERT S. BARDWIL

12                                   United States Bankruptcy Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

see attached list

**DATED:** 7/28/09

**By:** _____

**Deputy Clerk**

Cathy Guyer

**EDC 3-070 (New 4/21/00)**

This document does not constitute a certificate of service. The parties listed below will be served a separate Notice of Entry of the attached order or judgment.

Roxanne Daneri
555 University Ave #114
Sacramento, CA 95825

Scott CoBen
1214 F St
Sacramento, CA 95814

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814